First case of the afternoon is White v. Clevenger for the appellant, Mr. Klein, and for the athlete, Ms. Hildebrand. You may proceed. Please support, counsel. I'm here today to ask you to enter in order, or render an opinion, as the case may be. Reversing the summary judgment, enter in favor of the defendant by the Circuit Court of St. Louis County. As you're aware from reading the briefs, this case involves injury to my client, Sherry White, attempting to escape from a fire at an apartment stone's throw from here. The order of the Circuit Court granted summary judgment because the court found, as a matter of law, that there was no nexus, which I interpret to mean no causal connection, between the alleged code violation and my client's injury. And looking at Vax's case, I interpret that to mean that the trial court found, as a matter of law, that my client's failure, and she did not attempt to escape her apartment through the bedroom window, was fatal to her cause of action. That the code requires that there be an emergency exit in a basement apartment in the sleeping room. Let me just stop you there. There are two codes in play here, aren't there? Yes. Okay, and when you're saying the code, which one are you referring to? You're saying they are the same, they are the same anyway. They are not identical, but in all respects, I think relevant to this case, they are at least substantially similar. I'm not aware of any differences. We allege the violation of the building code, and when I refer to the code, I will be referring to the building code of the City of Springfield, because that was the code that the defendant was cited for a violation of after this fire. So, the question is, as a matter of law, did my client have to attempt to escape through a window which was, I believe the facts will show, at least there is a question of fact, whether it complied with the law. First of all, she was sleeping in the living room. She attempted to escape through a window in the living room by climbing onto a speaker and hitting it with a baseball bat. She found that she could not escape from that and was actually told by rescue personnel, stop trying to get through this because you're cutting yourself on the glass. The window had a bar between, it had an opening, it had a bar in the middle, reducing its effective opening by half. After being questioned by the rescue personnel, what other windows, what other means of escape were available? She told them there was one just like this in the bedroom, and there's another one in the bathroom, but it's different. It doesn't have the bar in the middle, it's made out of plexiglass. They directed her to go to the plexiglass window where she was able to escape. Unfortunately, in the escape, she was injured, and that's why she brought the lawsuit. Okay, so we have a code, and we have an alleged violation of the code. We have, which I believe establishes a proper investigation of the duty. The purpose of the code is to establish a means of safe ingress and egress from basement apartments. The defendant attempts to limit that to only means of ingress and egress, excuse me, only to prevent injuries caused by inhalation of smoke or fire. There is no support for that, and the language of the code is a safe means of ingress and egress. How do you get around the fact that she was wrong? The window in the bedroom wasn't exactly like the one in the living room. I mean, is there any dispute that the fire inspector did say the bedroom window was okay? There's no dispute that the fire inspector said that the bedroom window was okay. And the bedroom window is removable. There's no evidence. Well, I thought that's what the repair was. The defendant says that it was removable. Well, it had to be removable, or you had to be able to do something, whether it was the fire inspector. I mean, the presumption that the fire inspector thought that it was safe, or thought that it was a means of egress. You may presume that, but that isn't enough presumption on the part of the defendant. It's not enough to establish as a matter of law that that window was compliant. Because the focus and the code violation cited was that that window did not have a step. It did not have a step in front of it, and that's what the defendant thinks. The fire inspector who actually did the inspection and gave the fire code citation said he didn't measure the window. He just looked at it, and what he was focusing on was the height of the step. So I don't think that presumption can be made that the window was removable. If it was removable, then there is no evidence of that other than the defendant's testimony, and I don't think that establishes it as a matter of law. Did anybody ever try to remove it? No. Well, actually, it was removed by a subsequent owner and replaced with a different window. But if the defendant has relied upon the inspector's opinion that the window is adequate for egress, where is there any negligence on the part of the defendant? It depends on whether or not his reliance was reasonable, and that is a question of fact for the jury, not a question of law to be determined on a motion for summary judgment. Okay. So you're saying that a jury would hear evidence that the defendant was told this egress window is not appropriate, the defendant makes attempts to make it appropriate, satisfies the fire inspector, the fire inspector says, okay, it passes muster now, and a rational jury could find that this defendant was in some way negligent or culpable? Yes, based on the facts of this case. Really? Yes. Okay. And the facts of this case are that the focus of the fire inspector was the step. The fire inspector's testimony that he never measured the size of the window. Is there anything wrong with the size of the window? Yes. Too small? Too small. And it is too small in a way which the window has to be a minimum of 820 square inches. It has to be a minimum of 24 inches tall and 20 wide. Well, 24 by 20 is not going to get you 820, so it has to be either 20 inches wide and 40 some inches tall, which if you look at these windows clearly it was not, or it has to be about 34 and a quarter inches wide and 24 tall. No one measured it, at least we have no evidence that anyone ever measured that window or tried to see whether it came out either before or after the fire. The only thing that we have is my client who said the window in the bedroom looked just like the window in the living room and I couldn't get one out of the living room even using a baseball bat. And the code requires that the window, the sash we'll call it, the part that's movable inside the frame has to be removable without the use of tools. A baseball bat in this case I suggest was a tool and it couldn't even be removed with that tool. So on the facts of this case a reasonable jury could conclude that the window was not compliant. The building code inspector said it wasn't compliant. The fire inspector said it was. They've got to choose one or the other. A reasonable jury could conclude that the building inspector was right and the fire inspector was wrong and that my client should have an opportunity to present that evidence to a jury and to have that jury make a determination whether her actions were reasonable, whether the defendant's actions were reasonable in doing what he did. There's also a section of the defendant's... one of the inspectors. I believe the fire was the state fire marshal. But yes, one of them had to be wrong. And because one says it complied with the code and one said it didn't. The issue is whether it was reasonable for the defendant to rely on the fire inspector and not do other things to the window such as measure it and make sure that it was large enough and complied with the code. I suppose there's no suit against the city or the fire inspector because of immunity. There would be immunity. And also the fire inspector was... In 1998, the fire was in 2006. It was well beyond that. And I'm not aware of any duty, even if there was an immunity, for the city to go around and inspect and enforce the building codes. So, no. But the defendant, in his brief on page 21, indicates that he replaced the window at issue so that it could be opened without tools. He testified to that. None of the information from the fire code inspector indicates anything about replacing the window or that it was replaced or that there was a requirement. The only thing about the fire code was that step. And it was a step which is about as wide as the ledge here and maybe about as... not quite as... I guess that would be deep... wide. And it was tall, within a fraction of an inch of being tall enough to get within the code. So, my other issue before the trial court was, look, if you are going to put in a means of egress in a basement window and you don't tell the tenant, this is the safety egress, this is your means of getting out of here in case of emergency, then that is part of your duty to make it easy to remove and easy to exit without tools. The court found that there was no such duty. Judge Kavanaugh asked me and I looked, did a nationwide search. I have not found, to this day, any case which says that precisely. However, I did find a case called Bartelli v. O'Brien. It's here in Illinois, 307 Hill Ave. 3rd, 655, which deals with a similar but not identical fact pattern. In that case, there was a fire in a hotel. One of the facts which makes it similar is that fire was started by an arsonist, by someone intentionally in the hotel. The issue was, the lawsuit was brought by the owner of adjacent property because the fire, the landlord did not have, the hotel owner did not have adequate fire safety. They didn't have fire extinguishers and their sprinkler system didn't work. So fire got out of control, spread to the adjacent building and caused damage. There was no statute. There was no ordinance requiring fire extinguishers or sprinklers in that case. There was some suggestion that there should have been and that the case should have been pleaded that way, but it wasn't. That's what the case became before the trial of the court. And the court said, you don't, as a landlord, have a common law duty to have sprinkler systems or fire safety equipment. But when you put it in, you have a duty to make sure that it works. And my analogy is that when you put in a means of egress, that you have to make sure that it works, that you have to make sure that the person who is to be protected by that knows where it is and knows how to operate it so they can get out. And the court found that that was not a duty. Do we know whether or not the basement egress worked? I think you said that the facility was replaced before anybody looked at it, right? So we don't know. The only evidence that we know whether it worked was if it was the similar window to the one my client tried to remove at the basement. Well, it may have looked like the window, the living room window, but it may have had different hardware on it to allow egress. It may have. But if something is not intuitive, if it's not easy to operate, if it's not something that says remove by pulling out these two pins, then it's not easy to operate and doesn't comply with the code. If you can't figure out how to get it open, then it's not compliant with the code that it be easy to remove. And if it looks so similar to other windows, which are not, and basically what it would have to have if it was a slider window, you would have to be able to take out the two sashes so you could get it out. Or if it was the window, an awning-type window. So your argument is it doesn't matter that she didn't even attempt to get out the window? Right. It doesn't. Because we have evidence that the window that should have been compliant was not compliant. How is it not compliant? Because it was not of the proper size. But the inspector didn't measure it. I haven't measured it. The city inspector didn't measure it. Right, but she cited it as a code violation by looking at it that it was not the proper size. Is that very strong evidence? No. Which is why I had somebody measure it. How about the evidence that the new owner put in a similar window and it was removable? The panels came out. I think that helps my point. But the window didn't get any bigger. No, it didn't get any bigger. The framing around it is brick. It's not going to get any bigger than what it was. It could get smaller if you have the metal frame that holds the sash be bigger. But it's not going to get any... It could get smaller. Or it gets bigger if you can take it out. It gets bigger if you can take it out. Yes. Because if you can't take it out, and all you can do is bust out one side of it, which is 12 by 12, that certainly doesn't comply. If you can take the whole thing out, it might be 12 by 24. Still doesn't comply. So this window is not in compliance by size. It's not easy to remove. And it was not distinctive enough that my client could even tell that it was the safety, it was the means of exiting her apartment in case of a fire. So I think those facts should be decided by a jury and not by the court. There's also an argument in the appellee's brief that the defendant should not be held liable because he didn't start the fire. And the Bartelli case also addresses that. It was arson. And we're not suing him because he started the fire. We're not suing him because he didn't put it out. We're suing him because he didn't provide a reasonable means of egress in case of a fire, which was similar to the holding in the Bartelli case. It also held in that case that a fire, and I think the exact quote is not to state the obvious, but the danger of fire is foreseeable in virtually any context. And that's on page 655 of the opinion. So what we have is an accident or injury which was foreseeable based on a violation of a safety statute. And I agree that if the window had been 20 by 41 and that there was some way to know that it was different from the other windows and that there was a marked escape hatch, escape route, anything on there that absolutely the circuit court was correct in granting summary judgment, but this window didn't meet that test, didn't meet the standards. And my client or persons in similar situations shouldn't be held to go to a noncompliant window when there are other means of escape which are suggested to them by rescue personnel. Her actions were reasonable, the defendants were not. Summary judgment was not appropriate. Thank you. Thank you. Ms. Hildebrand? Okay, please, the court, counsel. Nothing that the plaintiff has presented to this court takes it out of the analysis of the Gouge case, and I'm probably butchering that name. We cited that extensively in our brief. What the plaintiff is essentially arguing is that there was a violation of a statute and I was injured, therefore you're responsible. And it is what he argued to the underlying court as well, which I pointed out in our brief, he's arguing strict liability. He's arguing that merely because there is a violation of some sort of ordinance, code, statute, that automatically liability follows. And that is not supported by the case law and specifically what the Supreme Court found in the Gouge case. In Gouge, the Supreme Court specifically found that in order to recover for a violation of an ordinance, safety statute as in this case, there has to be a connection between that violation and the injury. And that's why I believe the circuit court found as it did, there was no nexus, there was no connection between the alleged violation and the injury. The plaintiff, by her own admission, never entered the bedroom, never attempted to open the bedroom window, never attempted to use any tool, never attempted to break it. The only testimony we have from her is that that window was similar. There is no evidence that anything this defendant did led to this woman's injuries. Secondly, she also has to show that this is the kind of injury she suffered. We dealt with that a little bit. I think the main focus remains, she never attempted to exit the bedroom window, she never entered that bedroom window. She further alleges it wasn't easy to open, but there is no evidence that she ever tried to open that window and was unable to do so. So to argue that I was injured by the violation of the statute because I don't think I would have been able to get out of that window is complete speculation. There is no evidence before this court that shows that this woman was injured by the negligence of the defendant. In addition, as Your Honor pointed out, my client was told there was a violation or that his building was not in compliance in 1996. He took steps to remedy that situation. He was told by the state fire marshal's office that your building, your basement apartment is now in compliance. To argue that it's not reasonable for him to rely upon someone telling him that he has to go further than that is requiring more than reasonable care. What you're requiring is an absolute prevention of any and all injuries. And that is not what the law requires. A lot of these facts, I take that back, this was a horrible situation. This woman was trapped in the basement apartment. She was unable to get out of that apartment because she was frantic, she was panicking. She couldn't get out of the window where she had just awoken from the couch. The fact of the matter is, however, this defendant didn't do anything to lead to that injury. That is the only reason we pointed out that he didn't start the fire. He wasn't there in attempting to extricate this young woman from the building. And he didn't do anything to cause her injury. We're in a totally different situation if she's injured trying to get out of this window that allegedly was not in compliance. That is not where we are. And the further argument that a landlord has some sort of a duty to put an exit sign over a window or to put some sort of notification to its tenant is simply not supported by any case law. I think all of the extra facts in this case take our attention away from what the Supreme Court says is the focus. And in this case the focus is, was this person injured by the negligence of the defendant? Is her injury connected to the negligence of the defendant? My argument would be to you, as it was to the circuit court, there is no connection. There is no proximate cause between an alleged violation and the subsequent injury suffered by this young woman. It is our position and our request that you uphold the circuit court's granting of our summary judgment and find that under the Supreme Court case of gouge there is no nexus, no proximate cause between an alleged violation of this statute and the plaintiff's injuries. Thank you. Thank you. Mr. Klein, rebuttal. The plaintiff is not urging this court to adopt a strict liability standard. The plaintiff is urging this court to follow the guidelines of gouge and many other cases which say that evidence of violation of a statute enacted or an ordinance enacted for the public safety is a prime official case of negligence. We have established facts by the testimony of Beth Johnstone that there was a violation of the ordinances of the city of Springfield which are building code ordinances designed to avail the citizens hereof of safe egress from basement apartments in a case of violence. So those are the elements of negligence, not a strict liability. The argument that we are asking the defendant to go beyond what is reasonable and to rely simply on the statement of the fire marshal back in 1998 or 96 is to excuse someone from what may be an obvious violation if you take a tape measure and you read the building code by the fact that a public servant made a mistake. And the landlord is in the position to look and see what the window is, to understand what the building code is. He understood at least some of it that there had to be a window that could be removed without tools. He never says anything about what the measurements were, offered no evidence that I bought a window, this was the size of the window, any evidence to establish as a material fact that the window was in compliance. And he says basically I'm going to close my eyes to the fact of what the size of this is and I'm going to rely on something somebody told me about the step and I'm absolved from all liability from thenceforth and forever. And I don't think that's what the law is. In this room we have exits, we have signs for exits. The burden on the landlord if there's a safety exit in the basement window and it doesn't have to be lighted like that, maybe it should be, maybe it shouldn't, but all it is, you can take a magic marker and write exit beside that window and at least it would give some notice to the plaintiff that that's where you're supposed to go out. Now, if it had and she had tried that and been unable to get out, we would have a different case. There would be no question that we have established at least a question of fact to go to a jury on the negligence of the defendant. The fact that she tried one window, it didn't work, and was directed to another, which was different by its site, I think fulfills the facts necessary to take this case to a jury. Thank you. Thank you, Mr. Klein. We'll take this matter under advice.